# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| INDEPENDENT LABORATORY EMPLOYEES' UNION, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>EXXONMOBIL RESEARCH AND ENGINEERING COMPANY,<br><br>Defendant. | Civil Action No.: 17-cv-11858 (PGS)<br><br>MEMORANDUM AND ORDER |

SHERIDAN, U.S.D.J.

This matter comes before this Court on Plaintiff's motion to confirm arbitration award. [ECF No. 6].

I.

Plaintiff is Independent Laboratory Employee Union, Inc., an organization that represents the interest of Exxon employees who are based at Defendant ExxonMobil Research and Engineering Company's Clinton facility. In brief, this action seeks the entry of a judgment confirming an arbitration award issued in favor of Plaintiff and against Defendant. (Compl. ECF No. 1-2 ¶1). The arbitration award was entered by Roger E. Maher and delivered to the parties on September 26, 2017. (Id., ¶2).

The facts that led to the original arbitrated dispute are as follows. The dispute arose from Defendant's decision to abolish the previously offered "United Way Day Off Program" from represented employees. (Id., ¶7). As part of this program, each year, Exxon would set a financial goal for employee charitable donations to the United Way Fund (sometimes combined with a

participation goal) and promised employees in advance that if the goal was met, they would obtain an extra paid day off to use as they saw fit. Prior to terminating the program in 2016, Defendant had offered the United Way Day Off for nine years. Given the business industry conditions changed, ExxonMobil's main corporate campus in the Houston area ended the program in 2015. (Tr. 173, 178-79). Other locations followed. The Exxon corporate executives requested that ExxonMobil Research end the program, which it did in September 2016 after internal review. (Tr. 173, 178-79). When the Union heard rumors that Exxon had ended the United Way Day off, and that Defendant was also going to end it, they raised the issue in a regularly scheduled quarterly meeting on September 14, 2016. There, Defendant explained that site management was evaluating whether or not to continue the United Way Day Off and it would notify the Union when it made a decision. (Tr. 13, 16, 32-33, 76-81-108). On the same date, the Company reminded the Union that during the 2013 CBA negotiation, Defendant had referred to the Union Way Day Off as an example of management discretion in allowing a day off with pay outside of the bounds of the CBA, yet they did not request to bargain on the matter at the time. (Tr. 111, 137).

On September 30, 2016, Defendant provided written notice to the Union that it was eliminating the program. Five weeks later, Plaintiff filed a grievance. The parties proceeded to binding arbitration before a neutral arbitrator of the American Arbitration Association (AAA) to determine whether Defendant violated the CBA between them and the Union by discontinuing the United Way Day off without first bargaining with Plaintiff. (Compl., ¶10). A hearing was held before the Arbitrator on June 27, 2017. (Id., ¶11). After the hearing, the Arbitrator determined that Defendant violated the CBA by unilaterally discontinuing the United Way Day Off. The Plaintiff's grievance was upheld and granted. (Id., ¶¶12-13). In his decision, the Arbitrator recognized that the United Way Day Off was a long standing practice considered by both parties to fall within the

excused with pay definition provided by Article X. (Arb. Dec. pg. 10-11). He addressed the requirement to bargain and also did not find the United Way Day Off to be either a modification or an amendment that required to be in writing pursuant to Article XXIII, Section 2(b).

As a remedy, the Arbitrator determined that the represented employees should be granted a United Way Day Off for 2016; and the parties shall be required to bargain over the terms and conditions of the United Way Day off Program and their implementation for the 2017 campaign prior to the start of that campaign. (Id., ¶14). The Arbitrator further ruled that in the event the 2017 campaign had already started, the represented employers shall similarly be granted a United Way Day Off for 2017 while bargaining takes place and continues. (Id., ¶15).

Having failed to hear from Defendant as of October 4, 2017, Plaintiff requested bargaining in accordance with the Arbitration Award. Defendant responded, "we are still evaluating the Award including whether to challenge in court. I will keep you apprised of any developments." (Id., ¶18, See Ex. B to Complaint). On October 6, 2017, Defendant sent an email to employees at the Exxon's Clinton facility to officially kick off the 2017 United Way Campaign, which officially began on October 9. (Id. ¶¶20-21, Ex. C).

On October 11, 2017, Plaintiff filed a complaint in state court, along with an order to show cause. At the time Plaintiff filed the complaint, Defendant had not provided employees with a United Way Day Off for 2016 or 2017. The complaint lists one Count, for confirmation of the Arbitration Award pursuant to N.J.S.A. 2A:24-7. The matter was removed to this Court on December 6, 2017. Defendant removed the matter based on 28 U.S.C. §1331 federal question jurisdiction, because Plaintiff requested confirmation of an arbitration award reached in an arbitration proceeding held pursuant to the parties' Collective Bargaining Agreement. *See* 29 U.S.C. 185(a), Labor Management Relations Act. Plaintiff has not filed for remand. After the

matter was removed, and upon the parties' request for direction, this Court issued a briefing schedule for a petition to confirm an arbitration award. The petition is now before this Court.

Plaintiff argues that no ground exists to vacate or modify the arbitrator's award. Defendant rebuts arguing that the award fails to draw its essence from the CBA and cannot in any rational way be derived therefrom. Defendant also argues that the CBA contains a zipper clause that states the "agreement contains the entire agreement between the parties," and "any modifications or amendments shall be in writing." Further, Defendant supports that the CBA provides that no course of dealing shall affect the terms of the agreement. Overall Defendant argues that the Arbitrator disregarded the clear and unequivocal limitations on him and on reading the terms of the CBA.

## II.

Pursuant to the Federal Arbitration Act ("FAA"), there is a strong presumption in favor of enforcing arbitration awards. *Brentwood Medical Associates v. United Mine Workers of America*, 396 F.3d 237, 241 (3d Cir.2005). The Act underscores the overarching federal policy favoring arbitration to resolve labor disputes. *Major League Baseball Players Association v. Garvey*, 532 U.S. 504, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001); *see also Penntech Papers, Inc. v. United Paperworkers Int'l Union*, 896 F.2d 51, 53 (3d Cir.1990) (finding that the overwhelming presumption in favor of arbitration awards "protect[s] the benefits of labor arbitration, namely, speed, flexibility, informality, and finality."). Accordingly, a district court may only vacate an arbitrator's award in limited circumstances:

> (1) where the award was procured by corruption, fraud or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights

of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)-(4); *see also Hall Street Associates, LLC v. Mattel, Inc.* 128 S.Ct. 1396 (2007). "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (quoting *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Exxon Shipping Company v. Exxon Seamen's Union*, 801 F.Supp. 1379, 1384 (3d Cir.1992).

A court may, however, vacate an arbitration award if the arbitrator's decision is wholly unsupported by the agreement's plain language or the arbitrator fails to adhere to basic principles of contract construction. *News Am. Publications, Inc., Daily Racing Form Div. v. Newark Typographical Union, Local 103*, 921 F.2d 40, 41 (3d Cir.1990); *Exxon Shipping*, 801 F. Supp. at 1384. This Court may not "sit as the panel did and reexamine the evidence." *Mutual Fire, Marine, & Inland Ins. Co. v. Norad Reins. Co., Ltd.*, 868 F.2d 52, 56 (3d Cir.1989). Thus, if an "arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" *Eastern Associated Coal Corp. v. United Mine Workers of America*, District 17, 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000) (quoting *Misco*, 484 U.S. at 38). In other words, it is not within the province of this Court to substitute its judgment for that of an arbitrator's, however injudicious it may be. Rather, Congress' intent in passing the FAA and concurrent policy considerations guide this Court's obligation to uphold an arbitrator's judgment if the decision, on

its face, was drawn from the parties' agreement or is remotely based on reasonable contractual interpretation. *See United Trans. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir.1995).

Alternatively, courts have vacated arbitration awards in instances where the arbitrator demonstrates a manifest disregard for the applicable law. Although not explicitly enumerated as a grounds for vacatur under the FAA, the Third Circuit has recognized the "manifest disregard of the law doctrine [as] a judicially-created one that is to be used 'only [in] those exceedingly rare circumstances where some egregious impropriety on the party of the arbitrators is apparent, but where none of the provisions of the [FAA] apply." *Black Box Corp. v. Markham*, 127 Fed. Appx. 22, 25 (3d Cir.2005). To prevail under this doctrine, the moving party must demonstrate that the arbitrator ignored law that was "well defined, explicit, and clearly applicable to the case." *Koken v. Cologne Reinsurance (Barb.) Ltd.*, No. 98–0678, 2006 U.S. Dist. LEXIS 59540, at *6, 2006 WL 2460902 (M.D.Pa. Aug. 23, 2006); *O'Leary v. Salomon Smith Barney, Inc.,* No. 05–6016, 2008 WL 5136950, at *4 (D.N.J. Dec.5, 2008).

Here, there appears not to have been any fraud, misconduct, corruption, or abuse of power. Thus, the Court will review to determine whether the Arbitrator's construction of the CBA was so irrational and unreasonable that in doing so, the Arbitrator exceeded the scope of the CBA.

## IV.

The overarching question presented to us is whether the Arbitrator's award draws its essence from the CBA. The Union insist that it does; the Company argues that it does not.

Defendant argues that the Arbitrator failed to consider whether the CBA or any of its provisions were ambiguous or contained a "yawning void," pursuant to the holdings in *Bricklayers & Allied Craftworkers Local 5 of N.J. Pension & Annuity Funds v. Chanree Constr. Co.*, 2013

U.S. Dist. LEXIS 175192 (D.N.J. Dec. 12, 2013) and *Akers Nat'l Roll Co. v. United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union*, 712 F. 3d 155 (3d Cir. 2013), when it read the Union Way Day Off into the terms of the agreement. The basis of this argument being that the CBA contains a zipper clause which was allegedly disregarded by the Arbitrator in his decision. Additionally, Defendant argues that the award should be invalidated because the Union never requested bargaining after receiving proper notice of an intended change by the employer. This failure was allegedly also ignored by the Arbitrator.

Defendant deems the following CBA sections to be relevant to this Court's decision:

The "zipper clause," contained in Art. XXIII, Section 2, stating,

A. This Agreement contains the entire agreement between the parties.
B. Any modifications or amendments shall be in writing and subscribed to by the accredited representatives of the parties.
C. If the parties make any side agreements, any such agreement shall be terminable at will upon notice to the other party unless it is in writing and states that it is intended to be an amendment or a modification of this Agreement.

Section 3 of the same, the "Waiver clause," which establishes the right of any party to require strict performance of the agreement, Article VIII, Section 7(c), defining the authority of the Arbitrator, and the following provisions that address days off excused with pay: Article XV, Section 10 (Holidays), Artlicle XVI, Section 1 (Jury Duty), Article XVI , Section 2 (Death in the Family), Article XVI, Section 1 (Vacations), Article X, Section 8 (Time Paid During Regular Schedule).

The Arbitrator also considered Article XXIII, Section 2, and the waiver clause. Additionally, the Arbitrator considered the Management Rights section in Art. XXVIII and Article I section 2 which covers representation of employees by the Union, along with CBA provisions governing days off excused with pay (as listed above), and primarily Article X, Section 8 which regulates "Time Paid During Regular Schedule."

In reviewing the Arbitrator's decision, the Court notes that Defendant raised similar arguments to those raised before this Court now. Defendant argued that (1) the United Way Day was not bargained for, is not provided for in the CBA, and there was no implicit or explicit agreement with the Union to provide the day off, let alone in perpetuity; (2) the Company exercised its management right to provide the United Way Day and then to end it for legitimate business reasons; (3) Article XXIII, Section 2 of the CBA, precludes the United Way Day from becoming a binding past practice, and without an executed written agreement to incorporate the day into the CBA, the Company lawfully ended the day upon notice to the Union; and (4) the Company lawfully ended the practice under the NLRA after the Union failed to request bargaining despite the Company providing advanced notice. Defendant also raised other contractually related arguments that can be summed up as stating that the Company was not required to provide the day. (Arb. Decision ECF No. 1-2, pg. 6-7).

## The Arbitrator's Decision

### *The Zipper Clause*

In order for an Arbitrator to properly enforce a past practice, such as the United Way Day Off, despite the zipper clause, the Arbitrator must first determine that the CBA is ambiguous or contains a "yawning void." The Third Circuit Court discussed the standard for interpreting a CBA in *Akers* stating:

> Although extrinsic evidence is admissible to show that a written contract which looks clear is actually ambiguous, perhaps because the parties were using words in a special sense, . . . there must be either contractual language on which to hang the label of ambiguous or some yawning void . . . that cries out for an implied term. Extrinsic evidence should not be used to add terms to a contract that is plausibly complete without them.

*Akers*, 712 F.3d at 161-162 (quoting *U.A.W. Local 1697 v. Skinner Engine Co.*, 188 F.3d 130 (3d Cir. 1999)).

At inception, "the Arbitrator [upheld] the Union's grievance finding that the Company violated the CBA by unilaterally discontinuing the United Way Day Off program without first bargaining with the Union." (Arb. Award. Pg. 8). The Arbitrator found that the Union met its burden in proving that the United Way Day Off was a subject of the CBA and that "the Company's action contradicted a past practice connected to specifying this day as an instance of an excused with pay absence approved by the Company" as specified in Article X Section 8(1)(e) of the CBA. That Article states:

> B. In computing the 40 hours of time in the regular weekly schedule, in addition to time actually worked, time in the regular schedule not worked by reason of any of the following absences shall be included:
>
> 1. With pay— ...
>
> e) Any absence approved with pay by the Company.

The Arbitrator acknowledged that the United Way Day Off was a long standing practice and the day was considered by both parties, to fall within the excused with pay definition provided by Article X. (Arb. Dec. pg .10-11).

The Arbitrator addressed Defendant's argument that there was no obligation to bargain finding that Article XXIII, Section 2 of the CBA, "does not give the Company the right to unilaterally interpret or alter the interpretation of provisions contained within the CBA." The Arbitrator did not find the United Ways Day Off to be either a modification or an amendment that required to be in writing pursuant to Article XXIII, Section 2(b). Nor did he find the practice with respect to the United Way Day off to be an unwritten side agreement relating to something outside the CBA that a party might terminate upon due notice.

The Arbitrator pointed to a specific section in the CBA where to "hang the label of ambiguous or some yawning void . . . that cries out for an implied term." *Akers,* 712 F.3d at 161-

162. He evidences that both parties understood the United Way Day Off as being included within the terms of Article X, thus not requiring an amendment or modification. Although he failed to explicitly state that the section was ambiguous or to explicitly point to a "yawning void" in the CBA, the Court can see that Article X does not clearly specify in writing what days are the type that the Company approved for absence with pay. Further, Defendant's application of the *Bricklayers'* case to the facts of this matter is misplaced. In *Bricklayers* this Court applied the holding of *Akers* and stated that "mere silence concerning secondary liability in the CBA is insufficient to allow for the introduction of evidence of past practice "to add" a secondary liability term to the CBA agreement []- a contract that [wa]s plausibly complete without the secondary liability term." *Bricklayers*, 2013 U.S. Dist. LEXIS 175192, *11-12. However, in that case, unlike here, Plaintiff had presented no language "on which to hang the label of ambiguous." *Id.* at *12.

As the Third Circuit established in *Akers*,

> [A] labor arbitrator's award does draw its essence from the collective bargaining agreement if the interpretation can in any ration way be derived from the agreement, viewed in light of its language, its context, and any other indicia of parties' intention.

We find this to be the case in this matter. Thus, this Court finds the Arbitrator did not disregard the zipper clause in rendering the decision.

*Union's Failure to request bargaining*

Defendant's argument on the request for bargaining is not fully clear. First, Defendant argues that the United Way Day Off was not subject to bargaining and was appropriately unilaterally decided. Then Defendant argues that the Union should not be allowed to bargain now, because they never requested to bargain when they received notice that the United Way Day Off was being eliminated.

Defendant's argument that the Union did not request bargaining was also addressed by the Arbitrator:

> The reality as gleamed from the testimony at hearing and in the exhibits paints a different and in my eyes, and as a credibility determination, a truer picture. This truer picture indicated that beginning as early as 2014 decisions were being made by the Company regarding the United Way Program. For years the Company did not share any of this with the Union. Hearing rumors, the Union raised questions at its quarterly meeting with the Company on September 14, 2016. The response from the Company was abrupt, not terribly forthcoming and amounted to little more than advising the Union that when a decision was made they would be told of it. This is hardly an invitation to a discussion never mind some kind of expression of a willingness to bargain.

(Arb. Dec. pg. 12).

The Arbitrator also reviewed the Management Rights provision, and found it to be limited by the Recognition provision of the Agreement and by the NLRA establishing a bargaining obligation for mandatory subjects, which includes bargaining obligation before discontinuing the United Way Day Off. (Id. pg. 15). The Arbitrator further clarified the issue he decided stating:

> I agree that the Company is correct that Article X of the CBA does not require the Company to give the Union paid time off outside of jury duty or death in family. I do not find that the Company is required to give the Union paid time off for the United Way Day. I do find that the there is a contractual and lawful bargaining obligation before discontinuing the United Way day off.

Lastly with regards to the Company's argument that the United Way Day was not a binding past practice and that the "Entire Agreement" and the "Waiver" clauses preclude both a binding past practice and even a course of dealing. The Arbitrator noted:

> Even assuming that such is precluded by these clauses, neither of these clauses or any of the case law contained in the Company's post-hearing brief precludes this Arbitrator from finding that the "Recognition" provision of the CBA, as well as federal labor law, was violated when this employer unilaterally discontinued the United Way Day Off without bargaining over this mandatory subject of collective bargaining." (Arb. Dec. Pg 15).

We review the necessary requirements for a request to bargain:

> A request to bargain need follow no specific form or be made in any specific words
> so long as there is a clear communication of meaning, and the employer understands
> that a demand is being made. [] This must be determined from a review of all the
> circumstances. Statements and acts of the union or the employer cannot be viewed
> in isolation, and events both prior and subsequent to the request by the union may
> be examined in making that determination.

*NLRB v. Barney's Supercenter, Inc.*, 296 F.2d 91, 93, (3d Cir. 1961)(internal citations omitted).

The Union raised the issue of the United Way Day Off program on September 14, 2016, at a quarterly meeting, after hearing rumors that the program would be terminated. According to the standard provided, the Union's behavior could be construed as a request to bargain. At the same meeting, Defendant's reminder to Plaintiff about the the 2013 CBA negotiation, sounded like a denial of such request.

Plaintiff filed a grievance after the issue was raised and Defendant told them they would not be able to bargain. The reason for the grievance was to seek an opportunity to bargain, not to force Defendant to keep the program running indefinitely. The Arbitrator limited to deciding that precise issue.

"A court may not overrule an arbitrator simply because it disagrees with the arbitrator's construction of the contract, ...or because it believes its interpretation of the contract is better than that of the arbitrator." *News America Publications, Inc. v. Newark Typographical Union, Local 103*, 918 F.2d 24 (3d Cir. 1990) (citation omitted). Here, the Arbitrator's decision draws from the essence of the CBA and thus should be enforced. As the Third Circuit Court noted in *Akers*, "the Company accepted the risk of arbitration, and now seeks to avoid its result." As in *Akers*, this Court also cannot permit that.

## CONCLUSION

Based on the above review, the Court finds that the Arbitrator did not manifestly ignore the plain language of the CBA. The motion to enforce the arbitration award is GRANTED.

ORDER

This matter, having been brought before the Court on Plaintiff's motion to enforce the Arbitration Award [ECF No. 6], and the Court having considered the briefs and submissions of the parties; and having heard oral argument; and for good cause having been shown;

IT IS on this 20 day of February, 2018;

ORDERED that Plaintiff's motion to enforce the arbitration award (ECF No. 6) is GRANTED.

_____
PETER G. SHERIDAN, U.S.D.J.